IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BILLINGS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>ROBERT HAL HANSON,<br><br>Defendant. | CR 19-132-BLG-SPW-TJC<br><br>**ORDER** |

Defendant Robert Hal Hanson ("Hanson") has filed a Motion to Reopen Detention Hearing under 18 U.S.C § 3142, along with a brief in support, citing the COVID-19 public health crisis and Hanson's health as reasons for release pending trial. (Docs. 42 & 43.) The United States filed a response brief on April 1, 2020. (Doc. 45.) This matter is fully brief, and for the following reasons Hanson's motion is DENIED.

**I.  BACKGROUND**

The United States indicted Hanson on October 18, 2019, and an arrest warrant was issued the same day. (Docs. 1 & 6.) Hanson made a Rule 5 initial appearance on the indictment in the United States District Court for the Eastern District of Washington on December 18, 2019. (Doc. 12 at 10, 16-17.) A detention hearing was subsequently held on December 23, 2019 and the court ordered Hanson detained pending removal to the District of Montana. (*Id.* at 20.)

United States Magistrate Judge Mary K. Dimke found no combination of conditions would assure Hanson's appearance as required or ensure he would not be a danger to the community. (*Id.*)

Hanson was transported to Montana on January 21, 2020. (Doc. 29.) Arraignment was held on January 24, 2020, whereupon the United States moved for continued detention. (Doc. 30.) Hanson waived a detention hearing at arraignment but reserved the right for a hearing at a later date. (*Id.*) Hanson subsequently filed the instant motion to reopen his detention hearing. (Doc. 42.)

## II. DISCUSSION

Hanson moves to reopen his detention hearing pursuant to 18 U.S.C. § 3142(f). Under that section, a judicial officer may reopen a detention hearing at any time before trial "if the judicial officer finds that information exists that was not known to the movant at the time of the detention hearing and that has a material bearing on the issue whether there are conditions of release that will reasonably assure the appearance of [the defendant] as required and the safety of any other person and the community." 18 U.S.C. § 3142(f)(2).

Hanson also requests his temporary release under 18 U.S.C. § 3142(i). Section 3142(i) permits the temporary release of a defendant if "the judicial officer determines such release to be necessary for preparation of the person's defense or for another compelling reason."

2

Under § 3142(f), Hanson argues that information relating to COVID-19 was not available to the Court when he was detained. (Doc. 43 at 1-2.) Hanson asserts that because the COVID-19 health crisis was unknown at the time of detention, the Court could not consider that his chronic lung disease, COPD, categorizes him as high risk under the Center for Disease Control guidelines. (*Id.* at 2.) Hanson also asserts that his detention at Crossroads Corrections in Shelby, Montana, which is in Toole County and where two fatalities from the disease have occurred, makes inmates there at a heightened risk of contracting COVID-19. (*Id.*) Hanson further notes that he was temporarily released to attend his uncle's funeral, after which he reported back in accordance with the provisions of his temporary release, demonstrating he would not flee if given temporary release under the current motion. (*Id.*)

Hanson also argues for temporary release under § 3142(i), which permits temporary release if necessary for the preparation of the detainee's defense. (*Id.* at 2-3.) Counsel for Hanson asserts that his own advanced age places him at high risk if he contracted COVID-19, and therefore it is inadvisable for him to visit Hanson at Crossroads Correctional. (*Id.* at 3.) Thus, Counsel argues it is impossible to establish an attorney-client relationship and formulate his defense. (*Id.*)

The United States responds that Hanson has not asserted compelling reasons to warrant release, he remains a flight risk, and he poses a danger to the community. (Doc. 45 at 2.) The United States asks the Court to deny the motion. (*Id.*)

In recent weeks, U.S. District Courts across the country have considered a large volume of motions to reopening detention hearings predicated on the current COVID-19 public health crisis under § 3142's provisions. In considering those motions, several courts have recognized that release based on a defendant's concerns of heightened COVID-19 risk if incarcerated is not appropriately addressed under § 3142(f). *See e.g.*, *United States v. Clark*, No. 19-40068-01-HLT, 2020 WL 1446895, at *3 (D. Kan. Mar. 25, 2020). The Court agrees with the reasoning of those decisions. As quoted above, § 3142(f) requires that the new information relied upon have a material bearing on whether there are conditions of release that will reasonably assure the appearance of the person and the safety of the community. Hanson's concern for COVID-19 does not relate to findings that he poses a flight risk and a danger to the community. To reopen Hanson's detention hearing premised solely on COVID-19 would justify such action for any detainee concerned about the virus, with no regard for § 3142's requirements.

Instead, many courts have found that the determination of whether a defendant's circumstance warrants temporary release due to COVID-19 is more

4

suitably considered on a case-by-case basis under § 3142(i)'s "compelling reason" grounds. In *United States v. Clark*, the court elucidated four, non-exclusive factors to be considered when evaluating a motion for temporary release under § 3142(i) based on COVID-19: (1) original grounds for pretrial detention; (2) specificity of the defendant's stated COVID-19 concerns; (3) extent the proposed release plan mitigates or exacerbates other COVID-19 risks to the defendant; and (4) likelihood defendant's proposed release would increase COVID-19 risks to others. *Clark*, 2020 WL 1446895 at *3. The court advised that these factors would not be necessarily weighed equally but would be considered "as a whole to help guide the court's determination as to whether a 'compelling reason' exists such that temporary release is 'necessary.'" *Id.*

While these factors are certainly not exclusive, this Court finds the reasoning in *Clark* to be sound, and the guidance provided to be helpful. Applying the *Clark* factors here does not support Hanson's release.

First, Hanson was ordered detained after Judge Dimke found that no combination of conditions would assure Hanson's appearance as required or ensure he is not a danger to the community. (Doc. 12 at 20.) Judge Dimke's determination finds ample support in the record. Hanson has a lengthy criminal history, with several felony convictions for crimes of violence. He has also demonstrated that he is not amenable to supervision while on release, and has

5

committed several parole and probation violations, as well as violations of conditions of pretrial release. He is currently charged with serious controlled substance offenses providing a mandatory minimum ten years to life imprisonment if convicted.

Moreover, there is nothing in Hanson's proposed release plan that would address Judge Dimke's flight and danger concerns. Hanson proposes to be released to reside in a trailer on rural property near Lavina, Montana to live with his wife/co-defendant. Such an environment would make it very difficult for Pretrial Services to appropriately monitor Hanson, if not impossible given Pretrial Services' diminished capacity to conduct in-home monitoring under the circumstances posed by the COVID-19 pandemic. While Hanson's assertion that he was successfully temporarily released for a family funeral shows some capacity to follow conditions of release, the Court agrees with the United States that Hanson remains both a flight risk and danger to the community if released.

Second, with respect to a specific COVID-19 risk, Hanson states that he has COPD. This condition places him in a high-risk category and certainly presents a legitimate health concern. But this fact alone does present compelling reasons warranting temporary release. No COVID-19 cases have been reported at Crossroads Correctional, even if the county in which the facility is located has suffered two fatalities. No showing has been made that the deaths were related to

the facility, or that the individuals had any connection to the facility. In addition, Crossroads Correctional has taken precautionary measures, such as controlled access, relocation for high risk detainees, and enhanced sanitation. (Doc. 45-2.) Hanson has made no showing that these measures are insufficient.

Third, Hanson has not addressed the extent to which his proposed release plan mitigates or exacerbates other COVID-19 risks to him, or how his risk of exposure is any different inside Crossroads Correctional from outside. While detained at Crossroads, Hanson has ready access to health care within the facility. There has been no showing that the facility's medical treatment is insufficient or has been negligent, or that the facility would be unable to provide appropriate medical care if Hanson became ill. Further, he has not shown why his proposed release plan would be medically superior. He proposes to be released to live in a trailer in a rural environment where he would have no immediate access to medical care. The closest medical facility would be in Billings, 45 miles away.

Fourth, Hanson has not addressed how his proposed release plan mitigates any risk he poses to others; or how the community to which he wishes to be released would be affected or potentially affect him. In addition, as discussed above, Hanson has an extended history of noncompliance with supervision. As noted in *Clark*, a defendant who is unable to comply with conditions of release places law enforcement and pretrial services officers at increased risk if the

7

defendant violates conditions of pretrial release and must be arrested and returned to custody.

Therefore, considering the factors outlined in *Clark*, the Court finds that COVID-19 does not constitute a compelling reason for Hanson's temporary release.

Hanson also asserts, however, that he should be released under the provision of § 3142(i) which allows for temporary release when necessary for the preparation of his defense. The Court appreciates the challenges confronting Defense Counsel in effectively representing incarcerated defendants in our current environment. Nevertheless, it has not been shown that either Hanson or his counsel will be placed at less risk if Counsel is required to travel 300 miles round trip from his location Gallatin County to Lavina for in-person client conferences; nor has it been shown that the risk of infection would be decreased if Hanson were to travel to Gallatin County for conferences, which has the highest number of positive COVID-19 cases in the state. For the time being, counsel has access to Hanson via telephone. Given that the state of Montana is under a shelter-in-place order, that is how the great majority of business is currently being conducted in the state. While not ideal, Hanson has not shown why he cannot appropriately confer with Hanson, review discovery in the case, and properly advise Hanson by telephone.

//

Accordingly, IT IS ORDERED that the motion (Doc. 42) is DENIED.

DATED this 7th day of April, 2020.

_____
TIMOTHY J. CAVAN
United States Magistrate Judge